## GILFORD ROBERTSON v. IRWIN D. MOORER.

A statutory bond for writ of error given to operate as a *supersedeas*, is a lien upon the real estate of the obligors situated in the county where the original judgment was rendered, and the lien takes effect certainly from the filing in the District Court where the original judgment complained of was rendered, of the mandate of the Supreme Court, declaring (by affirmance of the judgment) the forfeiture of the bond.

The court inclines to the opinion that the bond operates as a lien from its date, but the point is reserved for further consideration.

An affidavit by a party stating that his adversary (who is the grantee) has possession of a deed, has been absent from the State for more than a year, still is absent, and his whereabouts unknown to affiant; that he has had no opportunity of procuring the instrument; that it is in existence, but knows not where it is, and cannot produce it, affords a sufficient predicate for the admission of secondary evidence as to its contents.

It is not a valid objection to the admissibility in evidence of a replevin bond that, on its face, it does not appear to be connected with any suit by recitals of the names of the parties to the suit in which it was taken, nor of those of the parties in whose favor or against whom the execution issued, nor states the amount for which such execution may have issued.

APPEAL from Panola. Tried below before the Hon. R. A. Reeves.

Joseph M. Pelham, on the 16th of June, 1854, recovered a judgment in the District Court of Panola county against Sherrod Hines for the sum of one hundred and fifty-six dollars and fifty cents. The defendant removed the cause for review to the Supreme Court, by writ of error, executing a bond for writ of error in double the amount of judgment, &c., so as to operate as a *supersedeas*; J. B. Turner and Jeremiah Albright being sureties on the bond. The judgment was affirmed by the Supreme Court against Hines and his sureties on the 24th day of April, 1855; on the next day the mandate of the Supreme Court to said District Court was issued, and was filed in the latter court on the 2d day of June, 1855.

An execution was issued on the mandate by the District Court on the 4th day of December, 1855. Albright enjoined it, giving bond as required by law. On the 20th of the same month and

year, the injunction was dissolved, and judgment entered against the principal and sureties on the injunction bond.

Several executions were issued for the collection of the judgment of Pelham against Hines, the sureties on the writ of error bond, and the sureties on the injunction bond. One of them issued January 15, 1856, and was levied on a horse and buggy as the property of Jeremiah Albright, who gave a replevin bond with sureties, which was forfeited.

On the 9th day of May, 1856, an execution was issued against the sureties on the writ of error bond, the injunction bond, and the replevin bond, which was levied on the ten acres of land in controversy in this suit, and on the 7th day of October, 1856, was sold by the sheriff to I. D. Moorer, the plaintiff, for the sum of twelve dollars and fifty cents. The land was levied on and sold as the property of Albright; Hines having died since the judgment, and before the issuance of the execution, was not included in the writ. Albright sold the land to the defendant Robertson and Samuel B. Lacey, and executed to them a bond for title on the 8th day of October, 1855, which was authenticated and filed for record on the 30th day of August, 1856.

On the 10th day of April, 1857, Moorer brought this action of trespass to try title, against the appellant Robertson, and afterwards Samuel B. Lacey was also made a defendant.

The defendants pleaded by a general denial, and a special plea setting up their purchase aforesaid for a valuable consideration from Albright in good faith, and charging notice to the plaintiff of the existence of their claim and right at the time of the sale; and that the plaintiff did not pay to the sheriff the purchase money bid for said tract.

The defendants proved that they, by their attorney, gave notice at the sheriff's sale to the plaintiff and all others present, of their claim and title, and of the fact of the registration in that county of their said title. They also proved by J. P. Mason that before the issuance of the execution under which the sale was made, it was agreed between the district clerk of Panola county, the plaintiff Moorer, and the sheriff who sold the land, that if Moorer would buy the land at sheriff's sale, he need pay no money, but

the clerk would credit the costs of clerk and sheriff with the amount of the bid; and accordingly he paid nothing, except two dollars to the sheriff for his deed. The sheriff endorsed the amount of the bid as a credit on the execution.

The plaintiff offered in evidence a replevin bond given by Albright, payable for four hundred and fifty dollars to J. M. Pelham, conditioned that, whereas the sheriff of Panola county has this day, (28th day of January, 1856,) by virtue of an execution from the clerk of the District Court for Panola county, issued on the 15th day of January, 1856, levied on the following property, to wit: One bay horse and buggy, as the property of Jeremiah Albright, to satisfy said *fi. fa.*, and, whereas, said Albright has replevied the same : Now, if the said Albright shall deliver the said property to the sheriff at the court house in the town of Carthage, on the 16th day of February, 1856, then this bond to be null and void, otherwise to remain in full force and virtue. Signed by the principal and sureties, approved by the sheriff, and endorsed " 714. J. M. Pelham v. Jeremiah Albright *et al.* Bond. Bond forfeited on this February 16th, 1856. C. S. Scruggs, by W. E. Cox,.Deputy." To the reading of which the defendants objected, because the same was too indefinite, not describing any parties to any suit; nor the suit in which it was taken ; nor the party in whose favor it issued; nor the amount for which it was issued ; which objections were overruled, and the defendants excepted.

The plaintiff introduced J. R. Williams to prove the existence and contents of a deed from himself to Jeremiah Albright to the land in controversy, the plaintiff first having made affidavit in substance as follows: " That a deed to the land in suit was made by the witness to Jeremiah Albright on the 23d day of January, 1855, and delivered to him by the witness; that Albright was absent from the State since some time in 1856 ; that deponent does not know where he is, and has had no opportunity of procuring the deed; that he cannot procure the original; that witness informed him that such a deed was in existence, and was made and delivered by him to said Albright; that he does not know where the deed now is ; that affiant has never had it in pos-

session." Defendant objected to the evidence offered, because it would be a substitution of parol for written evidence, without a sufficient predicate having been laid. The objection was overruled, and the defendants excepted.

The court charged the jury that the bond for the writ of error executed by Hines, Turner and Albright, on the 14th day of November, 1854, has the force and effect of a judgment, and operated as a lien on the lands of these parties situated in Panola county, from the date of the bond, and if the jury find from the evidence that Albright was then the owner of the tract, or acquired it afterwards, it was liable to sale under the execution; and if it appears that the plaintiff was the purchaser, he would be entitled to recover. But if they should find, from the evidence, that Albright had, before the date of the bond, sold the land to the defendants, they would be entitled to a verdict.

The defendants asked the court to charge the jury, "that if they believe from the evidence that there was a combination between the plaintiff and the sheriff who sold the land, or between said plaintiff and any other person or persons, to obtain the land in controversy for nothing, or for an inconsiderable price, very greatly below its value, the defendants are entitled to a verdict." Which charge the court refused to give.

The jury found a verdict for the plaintiff for the land described in the petition, and judgment was rendered accordingly.

The appellant assigns as grounds of error—

The admission of the testimony of J. R. Williams, to the introduction of which they had objected.

The charge given by the court.

The refusal to grant a new trial.

That the verdict of the jury was contrary to the law and the evidence.

The overruling of the objections of the defendants to the introduction as evidence, the replevin bonds.

The refusal by the court to give the instructions asked by the defendants.

*Martin Casey*, for the appellant.—The only provision of our

law which can give countenance to the charge of the court is Art. 793, Hart. Dig., where it is provided writs of error may be granted, but shall not operate as *supersedeas* unless bond be filed, conditioned "that the party shall comply with the judgment, order or decree of the Supreme Court upon such writ, and well and truly pay all such damages as may be awarded against him; which bond shall have the force and effect of a judgment against all the obligors, upon which execution may issue in case of forfeiture."

Art. 1624, Hart. Dig., provides—"That whenever final judgment shall be rendered by any of the courts of record of this republic, it shall operate as a lien on all the real estate of the defendant in the county where the judgment was rendered, from the day of the date of the judgment," &c.

This article contemplates those judgments only that are rendered by courts of record, solemnly adjudicating some matter in issue between the parties; and all such judgments are formally entered on the minutes of the courts, so as to enable any person desiring to purchase land, to ascertain whether he can get a title free from judgment liens, or incumbrances; but if every bond filed in a suit, which, on forfeiture, may become a judgment so as to authorize the issue of an execution, is to operate as a lien, then there can be no certainty that a purchaser can get a title to any land. Besides, such statutory judgments are not rendered by any court at all, but become so on some contingency without the action of any court, and so, can not come within the provision of Art. 1624, so as to operate as liens on lands before forfeiture and the levy of an execution. Again, such can not become judgments until forfeiture, and, posssibly, they may never become forfeited; nor can the purchaser of land know when they are forfeited. The construction of the court below would impede the alienation of property to an alarming extent.

Art. 2933, Hart. Dig., provides that the Supreme Court shall render judgment against the principal and sureties in the appeal or writ of error bond; and on receipt of the transcript by the clerk of the District Court, he may issue execution on the judgment of the Supreme Court. This is not a judgment rendered in the county where the land lies in this case, which a purchaser is

required to notice at his peril, but would operate as a lien in Smith county where the Supreme Court rendered the judgment.

By taking a view of all our statutory bonds, it will be seen that the legislature did not intend that any of them, on forfeiture, should become judgments to operate as liens, but simply that executions may issue upon them. If that quality make them such as to secure liens, then a judgment in a justice's court would have the same effect, since executions may issue on them also.

Art. 33, Hart. Dig., provides, that when attachment bonds are returned forfeited, executions may issue on them; but there is no provision that, on forfeiture, they shall operate as liens.

Art. 2869, Hart. Dig.  In sequestration bonds, judgment shall be entered against all the obligors jointly and severally.  Here, it is not the bond, on forfeiture, which operates as a lien, but the solemn judgment of the court rendered on the matters in litigation; and the legislature intended the party should have a judgment lien immediately, not on the bond, but on the solemn judgment of the court spread on its minutes, rendered like all judgments of "courts of record."

Art. 1332, Hart. Dig.  When the forthcoming bond is returned forfeited, an execution may issue against all the obligors in such bond.  Here, there is no formal entry of judgment, no lien provided, but additional personal security, the lien of the original judgment remaining.  The party loses no lien which he had acquired, but the law gives none on the forfeited bond until a levy is made.

Art. 1605, Hart. Dig.  Judgment is to be rendered against all the obligors in the bond, giving a judgment lien immediately, but not on the bond, the legislature always showing when they intended the party should have such a judgment on bonds as would operate as a lien.  And in all such cases, they direct the court that such judgment should be formally rendered.

In Austin v. Towns, (10 Tex. R.)  The first judgment is not merged in the judgment on the injunction.  To make the forfeited writ of error bond a judgment as if entered or rendered by the court, would be giving two judgments to the same party for the same subject-matter, and there would be a double lien.

28Y

In Cole v. Robertson, (6 Tex. R., 356,) it is decided that the forfeited forthcoming bond was no satisfaction of the original judgment, but an additional security. The court say, in that case, page 362, "What is a judgment? The answer is, that it is the decision of a court of competent jurisdiction on the subject-matter before it. Now, subject the forfeited bond to this test, and it would be wanting in the essential ingredient of being the decision of a court; and so far from being a judicial act, it discloses only the ministerial act of returning the bond forfeited." And on page 364, the court say that "the former (meaning a judgment rendered by the court) is rendered in a court, in a regular suit, regulated by the course of judicial proceedings, under the solemn sanction of a court of competent jurisdiction; the other is by implication of law raised to sustain an execution;" thereby confining the force, dignity, and effect of statutory bonds to the single quality of authorizing an execution to issue on their forfeiture. This view of the question has been held by the courts of Louisiana in several cases.

By the Code of Practice of Louisiana, Art. 719, when a twelve months' bond is executed at sheriff's sale, the plaintiff in execution, on the maturity of this bond, may have execution against all the obligors in the bond, thereby giving the bond the force and effect of a judgment.

Art. 1989, of the Civil Code of Louisiana, gives a judgment creditor power to set aside certain contracts or transfers made by his judgment debtor, and limits the right to one year after judgment.

In Dawson v. Holbert, (4 La., Ann., 36,) the petitioners obtained judgment against Summers in 1840. In 1841, property of Summers was sold under *fi. fa.* on this judgment, of which Summers became the purchaser, executing a twelve months' bond with Holbert as security. In November 1841, Holbert made a donation *inter vivos* of a house and lot to his daughter Julia, reserving the usufruct to himself during life. Another creditor, with the consent of Holbert, sold this property under *fi. fa.*, and Daniel Philips became the purchaser, the money being partly furnished by Holbert and the friends of Julia; and Philips pro-

mised to hold for the use of Julia. Dawson and others brought suit to set aside these conveyances as fraudulent. The minor Julia set up prescription of one year, stating that Dawson and others became, on forfeiture of the twelve months bond, judgment creditors, and referred to Art. 719 of the Code of Practice. The Supreme Court say that they were not judgment creditors; that such must mean, according to the ordinary acceptation of these terms, judgments formally entered in a suit; and that the bond has ripened into a judgment only for the purpose of issuing execution, and for no other. This reasoning applied to the case at bar, precludes the forfeited bond from operating as a lien on land.

In Perkins v. Bank of La., (5 La. Ann., 222,) Perkins was the surety of Durell on a twelve months bond. The bond was transferred to the bank, and after the bank had received several payments from the principal, and given an extension of time, suit was brought on the bond. It was contended on the part of the bank, that the bond operated as a judgment against the surety, and, for that reason, giving time to the principal did not release the surety, a judgment debtor. But the Supreme Court decided that he was not a judgment debtor; that though Art. 719 of the Code of Practice gives an execution in such case, and though it may have one single quality of a judgment, it does not follow that it has all the qualities and consequences of such.

This seems to be a case in point, that a statutory bond may, on forfeiture, have one quality of a judgment to support an execution, it shall have none other, unless expressly given to it; and that it shall not operate as a lien on land, unless that quality is also superadded by the statute.

In Towns v. Harris, (13 Tex. R., 510,) and following, it is decided that by Art. 1227, Hart. Dig., a twelve months bond, on forfeiture, became a judgment for the purpose of having execution. issued on it against the principal and sureties. And by Art. 1304, H. Dig., the bond operated as a mortgage on the property on the sale of which the twelve months bond was given. It was also decided that it operated as a lien only on the property sold, and gave no lien until after forfeiture. This shows, that when the legislature intended a statutory judgment to operate as a lien,

they added that quality to it by express legislation, and prescribed the extent of that lien, which would be wholly unnecessary if its becoming a judgment on which execution may issue, would give it all the other qualities of a judgment. Hence, we conclude that the writ of error bond became no judgment at all until after forfeiture; nor then, so as to operate as a lien on land in Panola county, but simply that execution may issue on it in aid of the first judgment, which retained its first acquired lien, to which judgment lien Jer. Albright was no party.

The affidavit of Moore was wholly insufficient to let in the testimony of J. R. Williams, to prove the existence and contents of the deed by him to Albright.

Art. 745, Hart. Dig., provides, that when any instrument is recorded, and the party desiring to use its contents files with the papers of the cause an affidavit, stating that the instrument has been lost, or that he cannot procure the same, a certified copy of the record of any such instrument shall be admitted in like manner as the original could be.

This shows that the party must use a copy of a record before he can resort to parol evidence; for the record is written evidence. Yet, for any thing that appears in the affidavit, the deed from Williams to Albright may have been of record in Panola county, and the affidavit showed no diligence to ascertain that fact.

That there are degrees of secondary evidence, see 1 Greenleaf on Ev., note to § 84, page 114, where it is said, "The American doctrine as deduced from various authorities seems to be this, that if, from the nature of the case itself, it is manifest that a more satisfactory kind of secondary evidence exists, the party will be required to produce it. Thus, where the record of a conviction was destroyed, oral proof of its existence was rejected, because the law required a transcript to be sent to the Court of Exchequer, which was better evidence." And see authorities cited in this note. No effort was shown by the affidavit to ascertain where Albright was residing since 1856; and it may be that he would furnish the deed upon request, or an examined copy may be obtained by interrogatories.

If the positions argued as to the nature of statutory judgments,

Robertson v. Moorer.

not operating as a lien until levy under execution, be correct, and if the charge of the court was erroneous, a new trial ought to be granted; because, under that charge, the jury were bound to find for the plaintiff, and therefore, the 4th assignment was well taken, and the verdict was contrary to law and evidence.

The evidence clearly showed a fraudulent combination on the part of the plaintiff, the sheriff (Cox) and the district clerk, by their agreement that the costs were to be secured by a sacrifice of the land; and the testimony shows that ten acres of land in the town of Carthage were sold for two dollars—for this is all that was paid; and this was not paid for the land, but for the sheriff's deed. There is no evidence that the $12 50, the amount of the bid was credited on the judgment; and so, the sale of the land was of no benefit to any person except the purchaser. The effect of the judgment is to give the plaintiff, Moorer, ten acres of land for nothing! In Allen v. Stephanes, 18 Tex. R., 658, where, at sheriff's sale, the price paid is greatly disproportional to the value, small circumstances will be sufficient evidence of fraud, and annul the sale. The disproportion here was very great. It was the proportion of ten acres of land to nothing.

The replevin bond objected to had nothing in it to connect it with the case; and it would equally apply to any other execution in any other suit against Albright by any body else. No parties were mentioned; no suit was mentioned; no judgment was mentioned; no amount was mentioned. This bond being excluded, there was a levy on a horse and buggy of value sufficient to discharge the debt; and no disposition having been made of this sufficient levy on personal property, it became a satisfaction of the execution. And so this assignment was well taken.

*Charles D. Moore* and *Irving G. Mason*, also for the appellant.

*Poag & DeBerry*, for appellee.—The appellee respectfully submits that there is no error in the judgment of the court below.

1st. The plaintiff's affidavit shows clearly that he had ex-

hausted all the means within his power to produce the deed from J. R. Williams to Jeremiah Albright. He shows that the residence of the person to whom the deed was made and delivered is unknown to him, and has been ever since a short time after the making of the deed, which is sufficient excuse for not producing him, Albright, as a witness on the trial. He also swears that he has never had the deed in possession; that he does not know where it is, and cannot produce it. It also appears that the defendant was notified to produce it if in his possession. The defendant claims to be a purchaser of the land directly from Albright, before plaintiff purchased at the sheriff's sale. We think that it may be presumed that the deed was in his possession, if not in the possession of Albright. (See Greenl., 1 vol., § 558.)

It did not appear from the proof that the deed had ever been recorded, and if it were admitted that there are degrees in secondary evidence, and that a copy of the record, if one existed, would be better evidence of the contents of the deed than the parol evidence offered; it would devolve on the party objecting, to show that there was a record, which was not done. There was nothing in the proof or in the evidence offered, that would show that any better evidence existed, and it was properly admitted. (1 Greenl., § 84 and note.)

2d. There is no error in the charge of the court that is material in this case. If there was any error in the charge, it was in charging the jury that the writ of error bond operates as a lien on the lands of Albright, situated in Panola county, from the date of the bond, instead of from and after its forfeiture; but this was wholly immaterial, from the fact that the judgment of the court below was affirmed the 24th of April, 1855, and judgment on the bond rendered by the Supreme Court against Albright. Also, the mandate was filed the 2d of June, 1855, and execution issued thereon the 27th of June, 1855; all of which was prior to the time that the defendant purchased the land from Albright, which was the 2d of October, 1855.

That there existed a lien on the land in favor of Pelham, the plaintiff in the judgment and execution, at the time of the pur-

Robertson v. Moorer.

chase by defendant, Robertson, and that the lien continued up to the time of the purchase by plaintiff, is quite clear.

1st. By Art. 793, Hart. Dig., the bond has the force and effect of a judgment against all the obligors, upon which execution may issue after forfeiture. The effect of a judgment is, that it operates as a lien on all the lands of the defendant in the county where the judgment is rendered. (Art. 1624, Hart. Dig.)

2d. There was a judgment of the Supreme Court rendered against Albright, April 24th, 1855, which operated as a lien on the lands, independent of the provisions in Art. 793.

But it is contended by the appellant that neither the bond when perfected nor the judgment of the Supreme Court operated as a lien on the lands of Albright in Panola county, but that if any lien was created by either, that it only operated as such on the lands of the defendant, Albright, in Smith county, where the Supreme Court was held.

The appellee submits that this is not a proper construction of the statute, for the reasons :

1st. Because both of the statutes referred to were intended to have some practical effect, and were intended to operate beneficially alike in every county in the State.

2d. The Supreme Court being a court of appellate jurisdiction only, its judgments must be regarded as the judgments of the court from which the case came by appeal, or by writ of error. The county in which the judgment was rendered from which the appeal was taken, is the place where the judgment is to be enforced by execution, and the plaintiff in execution is required by law to exhaust the property of the defendant situated in the county where the judgment is rendered, before execution can be obtained against his property in any other county.

If, then, the judgment of the Supreme Court rendered upon an appeal or writ of error, is to be regarded as a judgment rendered in Smith county, then it would be necessary in every case in which judgment was rendered by the Supreme Court to first have an execution issued to the sheriff of Smith county, so that the defendant's property situated in that county might be sold before the execution could be properly issued to the county where the

original judgment was rendered. (Art. 1336, Hart. Dig.) This, however, has not been the practice.

It is no objection to the construction which we place upon the statute, to say that a purchaser of lands in the county where the original judgment was rendered, would have no sufficient notice of the existence of the lien, for there appears upon the records of the District Court of the county where the lien is to operate, evidence upon the record that there is a judgment of that court which has been removed to the Supreme Court; and in cases of writs of error there is amongst the papers of the cause a bond, which is a record with the names of the obligors upon whose property the lien is to operate, which we submit is sufficient notice to purchasers. If this construction is not correct, and no lien is created on the lands of the obligors on a writ of error bond, in the county where the bond is filed, then Art. 793 would be wholly inoperative so far as creating a lien on the property of sureties is concerned, for there would not be one case in every thousand in which the sureties would have property (land) in the county where the Supreme Court was held. We do not think that such a construction should be given to a statute as would wholly defeat its objects and prevent its operation.

We think that the statement of facts shows that the land was the property of Jeremiah Albright from the 20th of January, 1854, up to the time of the sheriff's sale, the 7th of October, 1856; that there was a lien on the land at the time defendant bought of Albright, 8th of October, 1855; that said lien was kept up to the time of the sheriff's sale, and that the title to the land passed to plaintiff by virtue of his purchase at the sheriff's sale.

It is a sufficient answer to the objection to the charge of the judge, to say that if there was any error whatever, that the error was, in view of the facts of the case, immaterial; that the verdict must have been the same under the law and testimony, if the charge had been different.

There was no error in not submitting the question to the jury, whether or not the purchase of plaintiff was fraudulent, there

being no testimony to show that fact; nor did the defendant ask the court to charge the jury upon that point.

There being no error in the judgment, the motion for a new trial was properly overruled, and the judgment of the court below ought to be affirmed.

BELL, J.—We are of opinion that there is no error in the judgment of the court below for which it can be reversed. The statute regulating the grant of writs of error provides that the writ of error shall not operate as a *supersedeas* unless the party who obtains the writ shall execute bond in an amount equal to double the amount of the judgment, order or decree upon which the writ of error was obtained. The statute then prescribes what the condition of such bond shall be, and the section concludes with these words: " which bond shall have the force and effect of a judgment against all the obligors, upon which execution may issue, in case of forfeiture." The judge below instructed the jury that in the event of the forfeiture of this bond, it operated as a lien upon the land of the obligors, situated in the county where the original judgment was rendered, from the time of its execution. This is the effect of the judge's charge to the jury. On the other hand, and in opposition to this view, it is contended that the writ of error bond created no lien whatever upon the property of the obligors, but that the only effect of the bond upon the obligors is to subject their property to execution, in the event that the judgment of the District Court be affirmed by the Supreme Court. This proposition, it will be perceived, goes to the extent of denying that the judgment of this court against the plaintiff in error and the sureties on his bond given to obtain the writ of error, creates any lien upon the lands of the sureties in the bond. But it is also contended, that if the proposition just stated be not a true one, then the judgment of this court, affirming the judgment of the District Court, will only create a lien upon the lands of the plaintiff in error, in the county where this court sits when it renders its judgment.

We think it very clear that neither of these two propositions can be maintained. It is true there are certain descriptions of

bonds which have one of the attributes of a judgment, but which are not judgments, in the full sense of that term.   Such are bonds conditioned for the delivery on the day of sale, of personal property or slaves levied on by the sheriff.   The law provides that execution shall issue against the principal and sureties on such bonds after the same shall have been returned to the clerk's office, with a declaration of forfeiture.   But in the case of bonds for writs of error, the law declares that they shall have the force and effect of judgments, in case of forfeiture.   It is a part of the force which belongs to a judgment, that it binds certain descriptions of property in a particular manner, to satisfy its demands.   In respect to the lien which the judgment creates upon property, the terms *force* and *effect* are equivalent expressions.

The only question that can be made is, from what time does the lien which is created by the declaration of the forfeiture of the bond begin to date ?   The judgment of this court affirming the judgment of the District Court, is the declaration of the forfeiture of the bond.   Does the lien created by the forfeiture relate back to the time of the execution of the bond so as to attach to the property of the sureties in the bond from that time, or does the lien attach upon the rendition of the judgment of this court, or does it attach at the time when the mandate of this court is filed in the office of the clerk of the District Court where the original judgment was rendered?   These are the questions.   And we incline to the opinion that was expressed by the judge who tried the cause below, that upon the forfeiture of the bond, the lien which springs out of it, relates back to the time of its execution, and binds the land of the surety in the county where the original judgment was rendered, from that time.   But we will reserve this point for further consideration when a case shall arise which demands its decision.   It is enough for the the present case that the mandate of this court was filed in the office of the clerk of the District Court before the appellant acquired any claim to the land. This court pronounced its judgment affirming the judgment of the District Court, on the 24th of April, 1855.   The mandate of this court issued on the 25th of April, 1855, and was filed in the office of the district clerk of Panola county, on the 2nd day of

June, 1855. The appellant Robertson, and Samuel B. Lacy, received their bond for title from Albright, on the 8th day of October, 1855. There can be no doubt that the lien created by the judgment of this court had attached upon the land in Panola county. It would be a very unreasonable rule of law that would confine the lien of judgments of this court to property situated in the county where the court was sitting when the judgment was rendered. The jurisdiction of this court is entirely appellate. It affirms the judgment of the court below. It does not even name the amount for which it renders its judgment, unless the particular aspect of the case makes it necessary to do so. The judgment is for the amount recovered in the court below—and the court below is required to carry the judgment into effect. We are of opinion that the court below did not err in refusing the instruction asked by the counsel for the defendants, and that there was no error in the rulings upon the admissibility of evidence. The judgment of the District Court is affirmed.

Judgment affirmed.